UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SWAIN

ROBERT MILLER, Derivatively On Behalf of   )
MARSH & MCLENNAN COMPANIES, INC.,   )    CIVIL ACTION NO.
            )
     Plaintiff,    )    04 CV 08516
            )
 vs.          )
            )
JEFFREY W. GREENBERG, LAWRENCE J.   )
LASSER, MATHIS CABIALLAVETTA, RAY   )
J. GROVES, CHARLES A. DAVIS, PETER   )
COSTER, GWENDOLYN S. KING, DAVID A.  )
OLSEN, LEWIS W. BERNARD, OSCAR   )
FANJUL, STEPHEN R. HARDIS, THE RT.   )
HON. LORD LANG OF MONKTON,   )    **JURY TRIAL DEMANDED**
MORTON O. SCHAPIRO, ADELE   )
SIMMONS, A.J.C. SMITH, JOHN T.   )
SINNOTT, JOHN D. ONG, ZACHARY W.   )
CARTER, W.R.P. WHITE-COOPER,   )
NORMAN BARHAM, FRANK J. BORELLI,   )
SAXON RILEY and FRANK J. TASCO,   )
            )
     Defendants,   )
            )
 - and -        )
            )
MARSH & MCLENNAN COMPANIES, INC.,   )
a Delaware corporation,   )
            )
     Nominal Defendant. )
            )



RECEIVED
OCT 28 2004
U.S.D.C. S.D.N.Y.
CASHIERS

## VERIFIED SHAREHOLDER DERIVATIVE AND JURY DEMAND

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

### NATURE OF THE ACTION

1.  This is a shareholder derivative action brought by a shareholder of Marsh & McLennan Companies, Inc. ("MMC" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust

-1-

enrichment that occurred between October 1999 and the present (the "Relevant Period") and that have caused substantial losses to MMC and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over all counts asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this court permissible under traditional notions of fair play and substantial justice.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to MMC occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUMMARY OF THE ACTION

5.     MMC is the world's largest insurance broker. In connection with its insurance operations, claims were made that the Company always acted with its clients' best interests in mind. It was insisted that MMC represented the interests of its clients, not the interests of insurance companies. Defendants assured investors that MMC protected the integrity of the bidding process used to place insurance policies and that the terms of competing bids were not disclosed to insurers.

6.     These representations were false. Contrary to public assurances that MMC acted in the best interests of its clients, a business plan was employed that required insurance companies to

funnel more than a billion dollars in kickbacks to MMC in the form of "contingent commissions." The commission agreements were referred to as "placement service agreements" ("PSAs"), or "market services agreements" ("MSAs"), even though no services were actually provided. In return for these payments, the bidding process was rigged, complicit insurance companies were shielded from competition and insurance customers were deceived into purchasing overpriced policies.

7.     The bidding process was rigged by procuring fictitious quotes from insurance companies. It was determined in advance who the wining insurance company would be. Then, it was arranged for other insurance companies to submit inflated bids that were substantially higher than the pre-determined winner's bid, merely to create the false appearance of competition. By so doing, clients were deceived into mistakenly believing that the insurance companies were actually competing for their business on the basis of price.

8.     Defendants' practices, while profitable, misled investors and fraudulently inflated the trading price of MMC's securities. In 2003, for example, MMC reported approximately $1.5 billion in net income. Approximately $800 million of those earnings, however, were attributable to the kickback payments. MMC's financial results throughout the Relevant Period were misleading because defendants failed to disclose that those results were only achievable by engaging in unethical and illegal business practices.

9.     On October 14, 2004, when the extent and nature of MMC's unethical practices were revealed, MMC's stock price dropped 25%, from $46.01 to $34.85 per share. As the market digested the information, MMC's stock continued to drop, falling to $29.20 by the end of October 15, 2004.

## THE PARTIES

10.     Plaintiff Robert Miller is, and was at times relevant hereto, an owner and holder of MMC common stock. Plaintiff is a citizen of the state of Florida.

11.     Nominal defendant MMC is a corporation organized and existing under the laws of the State of Delaware with its headquarters located at 1166 Avenue of the Americas, New York, New York 10036.

-3-

12.   Defendant Jeffrey W. Greenberg is, and at all times relevant hereto was, Chairman of the Board of Directors (the "Board"), Chief Executive Officer ("CEO") and a director of MMC until his resignation on October 25, 2004. Because of Greenberg's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Greenberg participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings. For FY:03, FY:02, FY:01, FY:00 and FY:99, MMC paid defendant Greenberg $4,751,644, $5,839,841, $5,187,585, $2,700,000 and $2,300,000, respectively, in salary, bonus and other compensation, and granted him 500,000, 450,000, 400,000, 200,000 and 150,000 options to purchase MMC stock, respectively. Defendant Greenberg is a citizen of New York.

13.   Defendant Lawrence J. Lasser ("Lasser") was, at times relevant hereto, President and CEO of Putnam, a subsidiary of MMC and a director of MMC until November 2003. Because of Lasser's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Lasser participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:02, FY:01, FY:00 and FY:99, MMC paid defendant Lasser $18,407,744, $18,449,000, $34,243,000 and $27,000,000, respectively, in salary, bonus and other compensation, and granted him 150,000 and 150,000 options to purchase MMC stock for FY:02 and FY:01, respectively. During the Relevant Period, Lasser sold

504,844 shares of MMC stock for proceeds of over $26.3 million.  Defendant Lasser is a citizen of Massachusetts.

14.    Defendant Mathis Cabiallavetta ("Cabiallavetta") is, and at times relevant hereto was, Chairman of MMC Global Development and a director of MMC since May 2000.  Cabiallavetta is, and at all times relevant hereto, was Vice Chairman of MMC.  Because of Cabiallavetta's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Cabiallavetta participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, FY:02, FY:01, FY:00 and FY:99, MMC paid defendant Cabiallavetta $3,154,043, $2,884,002, $2,582,047, $1,500,000 and $1,033,333, respectively, in salary, bonus and other compensation, and granted him 300,000, 220,000, 200,000, 100,000 and 50,000 options to purchase MMC stock, respectively. Defendant Cabiallavetta is a citizen of New York.

15.    Defendant Ray J. Groves ("Groves") is, and at all times relevant hereto was, a director of MMC.  Groves was CEO of Marsh, Inc., a subsidiary of MMC until October 2004.  Because of Groves' positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Groves participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, FY:02 and FY:01, MMC paid defendant Groves $2,954,013 and $2,596,246, respectively, in salary, bonus and

other compensation, and granted him 300,000, 220,000 and 200,000 options to purchase MMC stock, respectively. Defendant Groves is a citizen of Connecticut.

16.    Defendant Charles A. Davis ("Davis") is, and at all times relevant hereto was, Vice Chairman of MMC, Chairman and CEO of MMC Capital, Inc., a subsidiary of MMC. Davis is a director of MMC and has been since May 2000. Because of Davis' positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Davis participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, FY:02, FY:01, FY:00 and FY:99, MMC paid defendant Davis $3,291,294, $2,884,002, $2,582,047, $1,555,000 and $1,325,000, respectively, in salary, bonus and other compensation, and granted him 250,000, 200,000, 200,000, 100,000 and 50,000 options to purchase MMC stock, respectively. Defendant Davis is a citizen of New York.

17.    Defendant Peter Coster ("Coster") is, and at all times relevant hereto was, President and CEO of Mercer, Inc., a subsidiary of MMC and a director of MMC. Because of Coster's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Coster participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, FY:02, FY:01, FY:00 and FY:99, MMC paid defendant Coster $2,657,013, $2,554,181, $2,654,902, $1,832,921 and $1,730,329, respectively, in salary, bonus and other compensation, and granted him 200,000,

120,000, 140,000, 60,000 and 50,000 options to purchase MMC stock, respectively. During the Relevant Period, Coster sold 255,748 shares of MMC stock for proceeds of over $13.7 million. Defendant Coster is a citizen of New York,

18.     Defendant Gwendolyn S. King ("King") is, and at all times relevant hereto was, a director of MMC. Because of King's position, she knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith. During the Relevant Period, King participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant King is a citizen of the District of Columbia.

19.     Defendant David A. Olsen ("Olsen") is, and at all times relevant hereto was, a director of MMC. Because of Olsen's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Olsen participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. During the Relevant Period, Olsen sold 85,100 shares of MMC stock for proceeds of over $4.9 million. Defendant Olsen is a citizen of Illinois.

20.     Defendant Lewis W. Bernard ("Bernard") is, and at all times relevant hereto was, a director of MMC. Because of Bernard's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and

connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Bernard participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Bernard is a citizen of New York.

21.     Defendant Stephen R. Hardis ("Hardis") is, and at all times relevant hereto was, a director of MMC. Because of Hardis' position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Hardis participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Hardis is a citizen of Ohio.

22.     Defendant The Rt. Hon. Lord Lang of Monkton ("Monkton") is, and at all times relevant hereto was, a director of MMC. Because of Monkton's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Monkton participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Monkton is a citizen of the United Kingdom.

23.     Defendant Adele Simmons ("Simmons") is, and at all times relevant hereto was, a director of MMC. Because of Simmons' position, she knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and

present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith. During the Relevant Period, Simmons participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. During the Relevant Period, Simmons sold 71,132 shares of MMC stock for proceeds of over $3.6 million. Defendant Simmons is a citizen of Illinois.

24.     Defendant A.J.C. Smith ("Smith") is, and at all times relevant hereto was, a director of MMC and was the Chairman of the Board of MMC until 2000. Because of Smith's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Smith participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  During the Relevant Period, Smith sold 1,080,000 shares of MMC stock for proceeds of over $60.7 million.  Defendant Smith is a citizen of Virginia.

25.     Defendant Oscar Fanjul ("Fanjul") is, and times relevant hereto was, a director of MMC since September 2001. Because of Fanjul's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Fanjul participated in the issuance of false and/or

misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Fanjul is a citizen of Puerto Rico.

26.     Defendant Morton O. Schapiro ("Schapiro") is, and at times relevant hereto was, a director of MMC since May 2002. Because of Schapiro's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Schapiro participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Schapiro is a citizen of Massachusetts.

27.     Defendant John T. Sinnott ("Sinnott") was, at times relevant hereto, Chairman of Marsh, Inc., a subsidiary of MMC and a director of MMC, until July 2003. Because of Sinnott's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Sinnott participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:02, FY:01, and FY:00, MMC paid defendant Sinnott $3,604,150, $2,317,243, $1,932,194 and $1,626,347, respectively, in salary, bonus and other compensation, and granted him 120,000, 120,000, 100,000 and 50,000 options to purchase MMC stock, respectively. During the Relevant Period, Sinnott sold 190,000 shares of MMC stock for proceeds of over $10.1 million. Defendant Sinnott is a citizen of New York.

28.     Defendant John D. Ong ("Ong") was, at times relevant hereto, a director of MMC until February 2002. Because of Ong's position, he knew the adverse non-public information about

the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Ong participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Ong is a citizen of Ohio.

29.    Defendant Zachary W. Carter ("Carter") is, and at times relevant hereto was, a director of MMC since May 2004. Because of Carter's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Carter participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Carter is a citizen of New York.

30.    Defendant W.R.P. White-Cooper ("White-Cooper") was, at times relevant hereto, Chairman and Chief Executive Officer of Operations encompassing Europe, the Middle East, Africa, Asia-Pacific and Japanese practices and a director of MMC until May 2000. Because of White-Cooper's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, White-Cooper participated in the issuance of false and/or misleading statements, including

the preparation of the false and/or misleading press releases and SEC filings. Defendant White-Cooper is a citizen of New York.

31.     Defendant Norman Barham ("Barham") was, at times relevant hereto, Vice Chairman of Marsh Inc., a subsidiary of MMC and a director of MMC until May 2000. Because of Barham's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Barham participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Barham is a citizen of New Jersey.

32.     Defendant Frank J. Borelli ("Borelli") was, at times relevant hereto, Senior Vice President and a director of MMC until October 2000. Because of Borelli's positions, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Borelli participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Borelli is a citizen of New York.

33.     Defendant Saxon Riley ("Riley") was, at times relevant hereto, a director of MMC until March 2000. Because of Riley's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and

committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Riley participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Riley is a citizen of the United Kingdom.

34.     Defendant Frank J. Tasco ("Tasco") was, at times relevant hereto, a director of MMC until May 2000. Because of Tasco's position, he knew the adverse non-public information about the business of MMC, as well as its illegal commission agreements, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Tasco participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Tasco is a citizen of New York.

35.     The defendants identified in ¶¶12-34 are referred to herein as the "Director Defendants." The defendants identified in ¶¶12, 32 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶13, 17, 19, 23, 24, 27 are referred to herein as the "Insider Selling Defendants." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

36.     By reason of their positions as officers, directors, and/or fiduciaries of MMC and because of their ability to control the business and corporate affairs of MMC, the Individual Defendants owed MMC and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage MMC in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in

furtherance of the best interests of MMC and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

37.     Each director and officer of the Company owes to MMC and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

38.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of MMC, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with MMC, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of MMC.

39.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of MMC, and was at all times acting within the course and scope of such agency.

40.     To discharge their duties, the officers and directors of MMC were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of MMC were required to, among other things:

(a)     Refrain from acting upon material inside corporate information to benefit themselves;

-14-

(b)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)     Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     Remain informed as to how MMC conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)     Ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

41.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of MMC, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant

-15-

Period has been ratified by the remaining Individual Defendants who collectively comprised all of MMC's Board during the Relevant Period.

42.    The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws.  As a result, MMC has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)    Costs incurred in investigating and defending MMC and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

43.    Moreover, these actions have irreparably damaged MMC's corporate image and goodwill.  For at least the foreseeable future, MMC will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that MMC's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

44.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

45.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the

Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at MMC and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of MMC, regarding the Individual Defendants' management of MMC's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

46.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least October 1999 and continuing thereafter. During this time the Individual Defendants caused the Company to conceal the true fact that MMC was misrepresenting its financial results.  In addition, defendants also made other specific, false statements about MMC's financial performance and future business prospects, as alleged herein.

47.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of MMC common stock so they could: (i) dispose of over $124.7 million of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

48.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results. Because the actions described herein occurred under the authority

of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

49.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

50.    MMC is the world's largest insurance broker. In connection with its insurance operations, claims were made that the Company always acted with its clients' best interests in mind. It was insisted that MMC represented the interests of its clients, not the interests of insurance companies. Defendants assured investors that MMC protected the integrity of the bidding process used to place insurance policies and that the terms of competing bids were not disclosed to insurers.

## IMPROPER STATEMENTS

51.    During the Relevant Period, the Individual Defendants caused three principal misrepresentations: (i) the Individual Defendants caused the false representation that MMC complied with a strict ethical code of conduct; (ii) the Individual Defendants caused the false misrepresentation of the nature of MMC's contingent commission agreements; and (iii) the Individual Defendants caused MMC to fail to disclose that its reported financial results during the Relevant Period had only been achieved by reliance on unethical and illegal business practices in violation of MMC's fiduciary obligations. Specific statements are set out below.

52.    During the Relevant Period, MMC's web page contained the following false statements concerning MMC's Code of Conduct for Insurance Transactions:

**Code of Conduct for Insurance Transactions**

The following code of conduct with respect to insurance transactions applies to all Marsh colleagues. This code of conduct codifies the principles the company follows in the execution of our responsibilities and augments our professional

standards and MMC's (Marsh & McLennan Companies) Code of Business Conduct & Ethics.

- **Clients First** - Marsh represents our clients. *All decisions will be made or actions taken with the client's objectives or best interests in mind.*

* * *

- **Level Playing Field** - *Qualified insurers will be provided opportunities to offer an initial proposal* if a client retains Marsh to obtain competitive alternatives, *without regard to Marsh revenue considerations.*

- **Bidding Integrity** - *The terms and conditions of competing quotations will not be shared among insurers.* It is understood that for layered or quota share placements, sharing of insurer terms may be necessary for completion of the placement. Further, we expect all parties to the transaction to maintain the confidentiality of proprietary information.

* * *

- **Completeness** - All competitive and valid quotes will be presented to the client. *Clients will also be advised of any carrier who* received a submission and declined to provide a quote; *did not offer competitive terms;* or did not respond in a timely manner.

* * *

- **No Inducements** - *Marsh colleagues will not seek entertainment or gifts for themselves or others* from anyone with whom Marsh does business, and will not accept entertainment or gifts that could influence, or appear to influence, any Company decisions. Unsolicited and infrequent gifts and business courtesies, including meals and entertainment, are permissible if they are: customary and commonly accepted, of minimal value, and accepted without an express or implied understanding of obligations associated with the acceptance of the gift or courtesies. Gifts of cash or cash equivalents are not permitted.

53.     MMC's web page defined MSAs as:

MSAs are agreements that govern compensation for the value that provide directly to insurance carriers and are based primarily on premium volume or growth. Brokers principally provide insurers with distribution networks, which facilitate the delivery of business.

54.   On October 26, 1999, the Individual Defendants caused MMC to issue a press release entitled "Marsh & McLennan Companies Reports Strong Third Quarter and Nine Months Results; Earnings Per Share Rises 17 Percent for Quarter." The press release stated in part:

> Marsh & McLennan Companies, Inc. (MMC) today reported that for the third quarter ended September 30, 1999, revenue increased 30 percent to $2.2 billion from $1.7 billion in 1998. Net income rose 20 percent to $223 million from $186 million, and earnings per share increased 17 percent to $.81 from $.69 in 1998.

55.   On February 2, 2000, the Individual Defendants caused MMC to issue a press release entitled "MMC Reports Strong Fourth Quarter and Year-End Results; Earnings Per Share Rises 17 Percent for Quarter and Year." The press release stated in part:

> Marsh & McLennan Companies, Inc. today reported strong revenue and earnings growth for both the fourth quarter and year ended December 31, 1999.
>
> For the year, revenue rose 27 percent to $9.2 billion from $7.2 billion in 1998. Earnings per share, before special charges relating to MMC's acquisition of Sedgwick Group, increased 17 percent to $3.48, compared with $2.98 in 1998. For the fourth quarter, revenue was up 20 percent to $2.3 billion from $1.9 billion in 1998. Earnings per share, excluding the special charges, grew 17 percent to $.82 from $.70 in 1998.

56.   On March 29, 2000, the Individual Defendants caused MMC to file its 1999 Report on Form 10-K with the SEC. The Form 10-K contained the following false statements concerning MMC's placement services revenue and contingent fees:

> Revenue generated by risk and insurance services is fundamentally derived from the value of the service provided to clients and insurance markets ....

> Placement services revenue and contingent fees includes payments or allowances by insurance companies based upon such factors as the overall volume of business placed by the broker with that insurer, the aggregate commissions paid by the insurer for that business during specific periods, or the loss performance to the insurer of that business.
>
> *   *   *
>
> Also, the risk and insurance services segment experienced revenue growth of approximately 4% primarily due to net new business development and higher levels of placement services revenue.

57.   Between March 15, 2000 and March 31, 2000, defendant Lasser sold 147,558 shares of MMC stock at $43.78-$53.25 per share.

-20-

58.   On April 25, 2000, the Individual Defendants caused the Company to issue a press release entitled "MMC Reports Strong First Quarter Results, Earnings Per Share Rises 16 Percent for Quarter." The press release stated in part:

> Marsh & McLennan Companies, Inc. today reported strong revenue and earnings growth for the quarter ended March 31, 2000.  Revenues rose 13 percent to $2.7 billion from $2.4 billion in 1999. Net income grew 21 percent to $337 million from $279 million and earnings per share rose 16 percent to $1.19 from $1.03 last year.

59.   On July 26, 2000, the Individual Defendants caused the Company to issue a press release entitled "MMC Reports Strong Second Quarter and Six Months Results; Earnings Per Share Rises 17 Percent for Quarter." The press release stated in part:

> Marsh & McLennan Companies, Inc. today reported strong revenues and earnings for both the quarter and six months ended June 30, 2000.
>
> For the quarter, MMC's revenues rose 11 percent to $2.5 billion. Net income grew 21 percent to $276 million and earnings per share rose 17 percent to $0.96. For the same period of 1999, net income was $228 million and earnings per share was $0.82, excluding a special charge.
>
> For the six months, MMC's revenues reached $5.1 billion, up 12 percent from $4.6 billion in 1999. Net income increased 21 percent to $613 million and earnings per share grew 16 percent to $2.15, compared with $507 million and $1.85, respectively, for the same period of 1999, excluding the special charge.

60.   On July 31, 2000, defendant Lasser sold 120,000 MMC shares at $59.91-$63.03 per share.

61.   On October 19, 2000, the Individual Defendants caused the Company to issue a press release entitled "MMC Reports Strong Third Quarter and Nine Months Results; Earnings Per Share Rises 20 Percent For Quarter." The press release stated in part:

> Marsh & McLennan Companies, Inc. today reported strong revenues and earnings for both the quarter and nine months ended September 30, 2000.
>
> For the quarter, MMC's revenues rose 14 percent to $2.5 billion from $2.2 billion in 1999. Net income grew 26 percent to $282 million from $223 million, and earnings per share rose 20 percent to $0.97 from $0.81 in 1999.

62.   Between December 12, 2000 and December 13, 2000, defendant Lasser sold 30,000 MMC shares at $62 per share.